**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

GARRY WENDEL,

        Plaintiff,

v.    Case No. 6:14-cv-675-Orl-37DAB

FLORIDA DEPARTMENT OF
HIGHWAY SAFETY AND MOTOR
VEHICLES; TERRY L. RHODES; and
SUNSHINE SAFETY COUNCIL, INC.,

        Defendants.

## ORDER

This cause is before the Court on the following:

1. Motion of Defendants Florida Department of Highway Safety and Motor Vehicles and Terry L. Rhodes to Dismiss Plaintiff's First Amended Complaint (Doc. 29), filed August 15, 2014;

2. Plaintiff's Response in Opposition to Defendants [sic] Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 35), filed September 11, 2014.

Upon consideration, the Court finds that the motion (Doc. 29) is due to be granted.

## BACKGROUND[1]

This action arises out of the alleged discrimination against Plaintiff when he attended Sunshine Safety Council, Inc.'s ("Sunshine") DUI School. (*See* Doc. 24, ¶ 1.) Plaintiff asserts two claims against Sunshine, the Department of Highway Safety and

---

[1] The facts in this section are taken as true and construed in favor of Plaintiff solely for the purpose of this motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). They are not the Court's findings of fact.

Motor Vehicles ("the DHSMV"), and Terry L. Rhodes, who is the Executive Director of the DHSMV, alleging violations of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("RA"). (*See id.*)

## I.   Defendants

Among its other duties, the DHSMV is responsible for licensing and regulating DUI schools pursuant to Florida Statute § 322.292. (*Id.* ¶ 3(B).) As part of its regulatory authority, the DHSMV is required to "[e]stablish policies and procedures for monitoring DUI programs' compliance with all rules adopted by the department," including the ADA, and to "[i]nvestigate complaints about the DUI programs." (*Id.* (citing Fla. Stat. § 322.292(2)(e), (g)).) As the Executive Director of the DHSMV, Terry L. Rhodes is responsible in her official capacity for the DHSMV's actions or omissions. (*Id.* ¶ 3(C).)

Sunshine is one of the twenty-six DHSMV-licensed DUI programs in the State of Florida. (*Id.* ¶ 3(B).)

## II.   The Incident

In 2008, Plaintiff—a veteran of the United States Army who suffers from PTSD, Panic Disorder with Agoraphobia, and Generalized Anxiety Disorder—was arrested for driving under the influence. (*Id.* ¶¶ 5, 9.) As a result and in order to get his driver's license reinstated, Plaintiff was ordered to attend a DUI Level II Course, which consists of twenty-one hours of classes and a psychosocial evaluation. (*Id.* ¶ 10.) In early 2013, Plaintiff enrolled in Sunshine's DUI School, which is only nine miles from his home. (*Id.* ¶¶ 11–12.)

After Plaintiff was unable to attend the first class due to a "severe PTSD flare-up" (*id.* ¶¶ 13–14) and upon request, Sunshine's Director of Programs allowed Plaintiff to bring a "battle buddy," Troy Robertson, to his psychosocial evaluation to provide aid to

him in case he had another flare up. (*Id.* ¶¶ 15–17.) On February 27, 2013, Plaintiff—accompanied by his mother and Robertson—attended his psychosocial evaluation at Sunshine. (*Id.* ¶¶ 17, 18(A).)  Despite being acknowledged by "an unnecessarily rude receptionist," Plaintiff kept a calm demeanor and remained patient and polite. (*Id.* ¶ 18(B).) Plaintiff's demeanor changed while he took a Driver Risk Inventory in a private area. (*Id.* ¶ 18(C).) Plaintiff began experiencing some of the "horrific symptoms associated with his unfortunate conditions" and he removed his shirt to cool off. (*Id.*) A Sunshine employee ordered Plaintiff to put his shirt back on, and he complied. (*Id.*)

During his psychosocial evaluation, evaluator Daniel F. Bodnar was allegedly unprofessional and discourteous towards Plaintiff. (*Id.* ¶ 18(E).) When Plaintiff explained that he "currently takes and has taken prescription medications for PTSD and Generalized Anxiety Disorder for approximately thirty years and for Agoraphobia for approximately seventeen years after being diagnosed by both private and VA physicians," Bodnar recommended that Plaintiff needed substance abuse counseling. (*Id.* ¶¶ 18(E)–(F).) Then the following chain of events occurred: Bodnar accused Plaintiff of being high, ordered him to get out, made rude comments to both Plaintiff and his mother, and created a scene; an additional Sunshine employee ordered Plaintiff's group to leave and threatened to call the police; and, a present police officer, "with his hand on his weapon," told Plaintiff's mother to get out. (*Id.* ¶¶ 18(F)–(G).)

Plaintiff left, and the following day he received a letter notifying him that: (1) Sunshine would not provide him services "as his behavior at his evaluation was in violation of the Florida State Statute governing the course"; but (2) Sunshine would grant him permission to attend another DUI school. (*Id.* ¶¶ 19–20.) The next closest DUI School

is fifty-four miles from Plaintiff's home. (*Id.* ¶ 20.) Although Sunshine refunded Plaintiff, he still wants to complete his DUI schooling at Sunshine because his conditions allegedly prohibit him from getting to the other DUI schools. (*Id.* ¶¶ 21–22.)

### III.  The Instant Action

Plaintiff brought this action against Sunshine, the DHSMV, and Terry L. Rhodes for violations of Title II of the ADA and the RA. (*See id.*) Significantly, Plaintiff alleges that the DHSMV and Terry L. Rhodes (collectively, "the Department") are liable for "the discriminatory actions and omissions that occur during [Sunshine's] operation of the Department's licensed services and programs." (*Id.* ¶ 32.) He seeks injunctive and declaratory relief for the alleged ADA violations and damages for the alleged RA violation. (*Id.* ¶ 38, 54, 60.) The Department moves to dismiss.[2] (*See* Doc. 29.) Plaintiff opposes. (*See* Doc. 35.) The matter is now ripe for the Court's adjudication.

## STANDARDS

### I.  Motion to Dismiss

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court limits its consideration to "the well-pleaded factual allegations" in the complaint. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The factual allegations in the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this plausibility determination, the Court must accept the factual allegations as true and construe them in the light most favorable to the plaintiff; however, this "tenet . . . is inapplicable to legal

---

[2] Sunshine filed an answer and affirmative defenses on September 23, 2014. (*See* Doc. 39.)

4

conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleading that offers mere "labels and conclusions" is therefore insufficient. *Twombly*, 550 U.S. at 555.

## II.   ADA and RA

The ADA prohibits discrimination against a disabled person by reason of the person's disability. *See* 42 U.S.C. § 12132. To state a claim under Title II of the ADA, Plaintiff must allege: (1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity; (3) by reason of such disability. *Id.*; *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001).

The RA serves to protect and empower individuals with disabilities. *See* 29 U.S.C. § 701. Section 504 of the RA states that no disabled individual shall, "by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. To recover compensatory damages under § 504, Plaintiff must demonstrate that the discrimination was intentional. *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1191 (11th Cir. 2007). "With the exception of its federal funding requirement, the RA uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." *Badillo v. Thorpe*, 158 F. App'x 208, 214 (11th Cir. 2005).

## DISCUSSION

The Department moves to dismiss Plaintiff's claims on several grounds, including that his claims are barred by the Eleventh Amendment and sovereign immunity and that he failed to adequately state his claims. (*See* Doc. 29.) Recognizing that he would

ordinarily be barred from bringing suit against the Department, Plaintiff argues that: (1) his ADA claim for injunctive relief falls within the narrow exception to State sovereign immunity under *Ex Parte Young*, 209 U.S. 123 (1908); and (2) his RA claim for damages is permissible in accordance with 42 U.S.C. § 2000d-7 because the Department waived its sovereign immunity by accepting federal funds. (*See* Doc. 35, pp. 5–9.) The Court disagrees with the former and finds that the ADA claim is barred by sovereign immunity; and, although it agrees with the latter, Plaintiff failed to adequately plead the intentional discrimination necessary to recover compensatory damages under the RA. Moreover, the ADA and RA claims are both due to be dismissed for Plaintiff's failure to allege facts that create a reasonable inference of liability on behalf of the Department. The Court will address each point in turn.

## I.  Eleventh Amendment and Sovereign Immunity

Sovereign immunity is a "'fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution and which they retain today.'" *N. Ins. Co. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006) (quoting *Alden v. Maine*, 527 U.S. 706, 731 (1999)). Sovereign immunity is reinforced by the Eleventh Amendment to the United States Constitution, which states that the "judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Eleventh Amendment applies equally to federal suits against a state by that state's own citizens. *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999). Its protection "extends not only to the state itself, but also to state officers and entities when they act as an arm of the state." *U.S. ex rel. Lesinski v. S. Fla.*

*Water Mgmt. Dist.*, 739 F.3d 598, 601 (11th Cir. 2014) (citation and internal quotation marks omitted). For the following reasons, the Court finds that Plaintiff's ADA claim against the Department is barred by sovereign immunity, but his RA claim against the Department is not.

### A. ADA Claim

The Department argues that Plaintiff's ADA claim is barred by the Eleventh Amendment and sovereign immunity because the Department is an arm of the state. (*See* Doc. 29, pp. 5–6.) In response, Plaintiff argues that his ADA claim for injunctive relief falls within the *Ex Parte Young* exception to sovereign immunity. (*See* Doc. 35, pp. 5–7.) Defendant is correct.

Under the doctrine of *Ex Parte Young*, individuals may sue state officers "seeking *prospective* equitable relief to end *continuing* violations of federal law."[3] *Summit Med. Assocs.*, 180 F.3d at 1336 (citation omitted). The doctrine applies only to "ongoing and continuous violations of federal law." *Id.* at 1337.

Plaintiff has failed to allege an ongoing and continuous violation of the ADA by the Department to bring his claim within the *Ex Parte Young* exception. Contrary to Plaintiff's assertions, the Department's failure to investigate Plaintiff's one-time complaint does not constitute an ongoing violation in the absence of any other complaint that Sunshine may continue to discriminate against persons with disabilities in violation of the ADA. (*See* Doc. 35, pp. 6–7); *see also Papasan v. Allain*, 478 U.S. 265, 277 (1986) (stating that, to fall within the *Ex Parte Young* exception, it is not enough for a law to have been

---

[3] The Department does not contest that Plaintiff is seeking prospective equitable relief. (*See* Doc. 29, pp. 5–6.)

violated only "at one time or over a period of time in the past"). Nothing in the Complaint suggests that Sunshine has a habit of noncompliance with the ADA that will continue or that the Department was on notice of the potential for such discrimination in the future. (*See* Doc. 24.) Thus, Plaintiff has not adequately pled an ongoing violation sufficient to satisfy the *Ex Parte Young* doctrine; accordingly, his ADA claim against the Department is barred by sovereign immunity.

### B.    RA Claim

The Department also argues that Plaintiff's RA claim is barred by the Eleventh Amendment and sovereign immunity. (*See* Doc. 29, pp. 6–9.) In return, Plaintiff argues that the Department is not immune from a § 504 claim because the DHSMV accepts federal funding. (*See* Doc. 35, pp. 6–9.) Here, the Court agrees with Plaintiff.

Ordinarily, an individual cannot bring a federal suit seeking damages against a State or its agency. *See Redding v. Georgia*, 557 F. App'x 840, 844 (11th Cir. 2014). However, such an action is not barred if there has been a waiver by the state or a valid congressional override. *Id.* Congress has explicitly conditioned the acceptance of federal funding on a state's waiver of sovereign immunity from suit under § 504 of the RA. *See* 42 U.S.C. § 2000d-7 ("A State shall not be immune under the Eleventh Amendment of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act . . . by recipients of Federal financial assistance."). Pursuant to Florida Statute § 20.241, the Department is a recipient of federal funding; as such, it has waived its sovereign immunity against a § 504 claim. (*See* Doc. 24, ¶¶ 39–44; Doc. 35, pp. 7–9.)

### II. Plaintiff Failed to State a Claim for Compensatory Damages Under § 504 of the RA

Although the Department is not protected from the RA claim by the doctrine of sovereign immunity, Plaintiff failed to state a sufficient claim to seek compensatory damages under the RA. In his Amended Complaint, Plaintiff seeks compensatory damages, reasonable costs, and attorney's fees for the Department's alleged violation of the RA. (See Doc. 24, ¶ 54.) As Plaintiff is seemingly aware—evidenced by his request that the Court declare "that the Department has *intentionally discriminated* against [him]" (*see id.*)—he can only receive compensatory damages for intentional discrimination. *See Sheely*, 505 F.3d at 1191 (stating that "victims of intentional discrimination may recover compensatory damages," while "victims of unintentional discrimination may be limited to prospective relief preventing future violations").

Plaintiff has failed to allege facts that, if true, prove that the Department intentionally discriminated against him. The Department makes the following arguments with which the Court agrees: (1) it is not liable for a § 504 violation under the principle of respondeat superior because Rhodes was not deliberately indifferent to any discrimination (Doc. 29, p. 8); and (2) even if Sunshine is found to have intentionally discriminated against Plaintiff, the Department is not responsible for a violation that it did not directly carry out (*id.* at 7).

#### A. Deliberate Indifference

The Department is "liable for the deliberate indifference of someone whose actions can fairly be said to represent the actions of the organization." *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334, 350 (11th Cir. 2012) (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1989)). As the Executive Director of the Department, Rhodes is

undoubtedly an official who represents the organization. However, Plaintiff has failed to allege facts permitting a reasonable inference that Rhodes was deliberately indifferent to any discrimination. Plaintiff's argument that Rhodes was deliberately indifferent for failing to investigate his complaints—supported by the Department not having "factual detail regarding his conduct"—is simply not enough. (*See* Doc. 29, p. 15; Doc. 35, p. 16.) As previously noted by the Court, the Amended Complaint includes no allegations that Rhodes was on notice of any previous discriminatory acts by Sunshine or the DHSMV or that Sunshine was potentially noncompliant with the ADA. (*See* Doc. 24.) Thus, Plaintiff's allegations are not sufficient to create the inference that Rhodes, or the DHSMV through the principle of respondeat superior, was deliberately indifferent to any alleged discrimination. Consequently, he is not entitled to compensatory damages and his RA claim against the Department is due to be dismissed. *See Sheely*, 505 F.3d at 1191–92.

### B. The Department's Liability for Sunshine's Alleged Discrimination

Additionally, the Department is not responsible for a violation that it did not directly carry out; this analysis is equally applicable to the RA and ADA claims, which both require a showing of discrimination on behalf of the Department. *See Shotz*, 256 F.3d at 1079; *Sheely*, 505 F.3d at 1191; *Badillo*, 158 F. App'x at 214. Assuming that Sunshine did discriminate against Plaintiff because of his disability, any such discrimination cannot be attributed to the Department; rather, it is attributable to Sunshine alone. *See Whitehead ex rel. Whitehead v. School Bd. for Hillsborough Cnty.*, 932 F. Supp. 1393, 1395–96 (11th Cir. 1996) (finding that the Department of Education was not liable for a local school board's acts, even though it was responsible for ensuring that the local school board was compliant with the Individuals with Disabilities Education Act).

A licensor is not accountable for any alleged discrimination of its licensee. *T.W. v. Jacobo*, No. 4:13-cv-457-RH/CAS, 2014 WL 129056, at * 1 (N.D. Fla. Jan. 13, 2014). While the DHSMV—as a public entity—cannot administer a licensing program in a manner that subjects persons with disabilities to discrimination, "[t]he programs or activities of entities that are licensed or certified by a public entity are not, themselves, covered" by this regulation. 28 C.F.R. § 35.130(b)(6) (governing the conduct of a public entity administering a licensing program). This is further supported by the ADA Title II Technical Assistance Manual of the Department of Justice ("TAM"), which, in illustration, explains that a public entity is "not accountable for discrimination in the employment or other practices of [a private or licensed] company, if those practices are not the result of requirements or policies established by" the public entity. ADA TAM II-3.7200, *available at* http://www.ada.gov/taman2.html#II-3.7200 (last visited December 10, 2014).

In *Jacobo*, the court granted a motion to dismiss an ADA claim brought by plaintiffs with psychiatric disabilities against the Florida Agency for Health Care Administration ("AHCA"). 2014 WL 129056, at *1 (N.D. Fla. Jan. 13, 2014). The court explained that

> AHCA does not operate the hospitals. AHCA does *license* the hospitals, but it is more than a stretch to assert that AHCA has itself violated the ADA by failing to pull the licenses or otherwise take action to compel DCF to provide community-based services to these class members because the defendant licensed the hospitals but it did not operate them.

*Id.* Thus, the court found that the complaint failed to state an ADA claim on which relief could be granted. Similarly, under the facts alleged, the DHSMV, as the licensor of Sunshine, is not responsible for Sunshine's alleged discrimination.[4] *See id.*

---

4     Plaintiff's Amended Complaint contains allegations that the Department failed to monitor its programs or ensure that its licensed programs were operating in compliance

11

Plaintiff counters that this case is comparable to *Paxton v. State Department of Tax and Revenue*, 192 W. Va. 213 (1994). The *Paxton* court held that the Lottery Commission was liable for its lottery retail licensees' ADA violations because "through its contract vendors the Lottery Commission furnishes the lottery devices and services that allow the licensee to conduct lottery sales." *Id.* at 219. The Court further explained that

> the Lottery Commission does more than merely license lottery locations. It controls and obtains substantial monies from the lottery system. . . [T]he lottery is the service provided by the Lottery Commission, and it is this service that makes the Lottery Commission subject to the ADA under 28 C.F.R. § 35.130(b)(1).

*Id. Paxton* and the present case are distinguishable. Unlike the Lottery Commission, whose sole purpose is to conduct the lottery, the DHSMV provides a plethora of services,

---

with the ADA and is therefore liable (*see* Doc. 24, ¶¶ 24, 29, 33, 51), but these conclusory allegations fail to establish the Department's liability for Sunshine's acts.

    Relatedly, the Department argues that, because it is not responsible for Sunshine's alleged discrimination, Plaintiff cannot establish standing, which requires allegations sufficient to prove causation and redressability. (*See* Doc. 29, pp. 17–20.) It contends that, at best, Plaintiff's allegations establish a weak causal connection because, even if the Department "conduct[ed] both announced and unannounced site visits to ensure quality assurance and compliance with the . . . law" or did more "to ensure that its licensed programs were being operated in compliance with the rules" (Doc. 24, ¶¶ 23, 24, 33), Plaintiff's allegations do not create a reasonable inference that Sunshine would have acted in a different manner. *See Warth v. Seldin*, 422 U.S. 490, 507 (1975) (finding petitioners did not have standing when "they rel[ied] on little more than the remote possibility, unsubstantiated by allegations of fact, that their situation might have been better had respondents acted otherwise"); *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45 (1976) (suggesting that plaintiffs did not have standing when "[s]peculative inferences [were] necessary to connect their injury to the challenged actions of petitioners"). The Department further argues that Plaintiff's allegations do not create a presumption of redressability because DHSMV's only way to cure Sunshine's alleged noncompliance with the ADA is to revoke or rescind Sunshine's DUI School license. *See* Rule 15A-10.007, F.A.C.; Fla. Stat. § 322.292(2)(c). Although these arguments are persuasive, the Court does not resolve the motion based on standing because the sovereign immunity and licensor-licensee matters are dispositive.

only one of which is to license the DUI programs to these private entities and then regulate and supervise the programs. *See* Fla. Stat. § 322.292(1)–(2). These duties do not make the Department responsible for Sunshine's allegedly discriminatory actions. *See T.W.*, 2014 WL 129056 at *1; *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 69–70 (2d Cir. 2012) (concluding that plaintiff did not have a cognizable ADA clam against the NYC Taxi and Limousine Commission ("TLC"), even though it had regulatory authority over the licensees, because "nothing in the TLC's administration of the licensing program discriminates against persons with disabilities"); *Tyler v. City of Manhattan*, 849 F. Supp. 1429, 1442 (D. Kan. 1994) (explaining that "the programs or activities of licensees are not themselves programs of the public entity merely by virtue of the license" and that "Title II . . . [does] not go so far as to require public entities to impose on private establishments, as a condition of licensure, a requirement that they don't discriminate"); *Reeves v. Queen City Transp., Inc.*, 10 F. Supp. 2d 1181, 1186 (D. Colo. 1998) (concluding that the issuance of a license or certificate of operation to a private company "does not constitute a violation of Title II even if [that company] subsequently engage[s] in unlawful discrimination"). Consequently, Plaintiff's allegations, taken as true, do not establish that the Department is liable for any alleged discrimination on the part of the Sunshine, and his ADA claim against the DHSMV and RA claim against the Department are due to be dismissed.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED**:

1. The Motion of Defendants Florida Department of Highway Safety and Motor Vehicles and Terry L. Rhodes to Dismiss Plaintiff's First Amended Complaint

(Doc. 29) is **GRANTED**.

2. Plaintiff's ADA claim against the DHSMV and Terry L. Rhodes is **DISMISSED WITH PREJUDICE**.[5]

3. Plaintiff's RA claim against the DHSMV and Terry L. Rhodes is **DISMISSED WITHOUT PREJUDICE**. Plaintiff is entitled to amend the Complaint one more time on or before Tuesday, February 10, 2015.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on January 21, 2015.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record

---

[5] Plaintiff attempted to plead around sovereign immunity by alleging an "ongoing and continuous violation of the ADA" to fall within the *Ex Parte Young* exception. (*See* Doc. 24, ¶¶ 33–36.) This conclusory allegation is unsupported by facts. Presumably, Plaintiff plead all factual allegations within his knowledge to support the claim, hence the dismissal is with prejudice. For the reasons addressed herein, the Court finds that those allegations, even taken as true, do not support an ongoing and continuous violation of the ADA.

14